**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**DR. SERGIO ULISES ESPINOSA DOMÍNGUEZ,**

**Plaintiff,**

**v.**

**UNITED STATES PATENT AND TRADEMARK OFFICE,**

**and**

**JOHN A. SQUIRES,** in his official capacity as Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, Defendants.

**Civil Action No.: ___________**

Case: 1:26–cv–03290
Assigned To : Unassigned
Assign. Date : 9/18/2026
Description: TRO/Prelim. Inj. (D–DECK)

**Judge: ___________**

**COMPLAINT FOR EMERGENCY DECLARATORY AND INJUNCTIVE RELIEF**

**(UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706)**

Plaintiff, Dr. Sergio Ulises Espinosa Domínguez, as a pro se complainant, brings this Action for Emergency Declaratory and Injunctive Relief against the United States Patent and Trademark Office ("USPTO") and its Director, alleging as follows:

**NATURE OF THE ACTION**

1. This is an emergency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., seeking an immediate stay and preliminary injunction to halt the automated electronic issuance of U.S. Patent Application No. 17/608,275 (Projected Patent No. 12,741,295), currently scheduled for automated commercial publication on Tuesday, September 22, 2026.

2. This action is necessitated by a profound cross-departmental administrative breakdown within the USPTO. The clear, documented, and written notice of active, live-system data manipulation, document tampering, and spoliation of public records within the Patent Center database was directly triggered after the Plaintiff exposed a textbook *Therasense* case of inequitable conduct, wherein the applicants systematically hid two foundational co-authored articles from 2020 and

RECEIVED
SEP 18 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

2022 from Group Art Unit 1717. Despite this explicit notification confirming that the suspects reactively entered a locked federal repository to manually deface searchable metadata blocks to launder that structural omission, the Office of Patent Legal Administration ("OPLA") has defaulted entirely to automated clerical checklists, explicitly refusing to halt the printing queue

3. Because the USPTO is poised to knowingly consummate a fraudulent commercial asset track while the supervising practitioners are under active federal review by the Office of Enrollment and Discipline ("OED") (In re: Richard S Wesorick), the agency’s imminent issuance of this patent represents an unmitigated abuse of discretion and arbitrary and capricious agency action under 5 U.S.C. § 706. Plaintiff seeks immediate judicial intervention to preserve the integrity of the public registry.

**JURISDICTION AND VENUE**

4. Jurisdiction is founded upon 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 702 (the Administrative Procedure Act). Venue is proper in this District under 28 U.S.C. § 1391(e) because the Defendants reside and maintain their primary headquarters in this judicial district.

**FACTUAL ALLEGATIONS**

5. Plaintiff is a true omitted joint conceptual inventor under 35 U.S.C. § 116 of the underlying thin-film technology claimed in U.S. Patent Application No. 17/608,275. At the time Plaintiff was brought in to reinterpret the research, the applicants had already secured a **€1.1 Million public funding allocation from Business Finland**; however, their framework remained a technologically deadlocked, non-functional baseline that completely lacked a physical-chemical or structural explanation for its high electrical conductivity. Plaintiff exclusively conceptualized, directed, and authored the **Raman-Quinoid Framework**, utilizing precise multi-layer comparative Raman spectroscopic shifts to explicitly prove a structural benzoid-to-quinoid phase transition. This architectural model provided the definitive, missing mechanistic explanation for the system's conductivity, effectively validating their grant repository and establishing the primary industrial utility of the technology. Recognizing this core contribution, the applicants originally listed Plaintiff as an authorized co-author on identical tracking manuscripts submitted to the Royal Society of Chemistry and the
American Chemical Society.
6. For five consecutive years, the applicants systematically withheld the foundational, peer-reviewed Yewale 2020 and Yewale 2022 publications from Group Art Unit 1717, because disclosing these references would have instantly exposed Plaintiff’s co-inventorship, a cross-border title cloud, and an active international publishing dispute, the applicants executed a two-tiered technical deception to algorithmically blind the Patent Examiner in violation of the strict Duty of Candor under 37 CFR § 1.56:

- **The Suppression of the Standard Scientific Baseline:** The applicants completely suppressed <u>**their own**</u> authored 2020 and 2022 publications, which contained the <u>highly established</u>, pristine Raman Spectroscopic transition metrics conceptualized by the Plaintiff to mechanically explain the thin film's high conductivity.

- **The Fabrication of the 'Example 2' Pseudoscientific Decoy:** Because the applicants could not deploy the authentic Raman framework without unmasking the Plaintiff as the true author of the science, they copy-pasted an unscientific, non-causal text decoy into **'Example 2' (Table 4 and Figure 6)** of the patent specification. This decoy mapped polymerization temperatures against Atomic Force Microscopy (AFM) surface roughness metrics to serve as an artificial shield. The narrative is technically fraudulent and mathematically impossible: Entry 8 in the applicants' own published data matrix is 37% rougher than Entry 2, yet 210% less conductive. **There exists no logical or scientific justification for withholding the superior, standard Raman method and substituting a non-causal AFM matrix other than a premeditated, malicious intent to deceive the Office**, hide the true conceptual mechanics of the physics, and sanitize the public registry of the Plaintiff's name.

7. Following Plaintiff's independent unmasking of the hidden U.S. prosecution track in August 2026, which had been concealed through an international wall of academic silence, Plaintiff served formal *Therasense* alerts upon Applicant's managing counsel.
8. Rather than executing a transparent procedural withdrawal, internal database operators and counsel for the applicants engaged in a calculated, multi-stage sequence of out-of-procedure live-docket data manipulations straight onto historically processed federal repository layers:

- **The Initial April 2026 Fracture and the May 28 Metadata Seeding:** The technical containment strategy originally fractured in April 2026 when Plaintiff delivered direct notices to the commercial advisors supervising the co-financed spinoff entity "OSSE"—a commercial vehicle whose valuation and €1.1 Million public funding allocation rely entirely on this patent. In direct response to this perimeter breach, on May 28, 2026, counsel successfully transmitted a massive multi-document electronic Information Disclosure Statement (IDS) upload correctly logging the text metadata for "CAPACITOR SCIENCES INCORPORATED" and "Lichun Chen et al.," proving their network systems and the USPTO's Patent Center server gates were functioning perfectly and locking in their subjective knowledge of the correct prior art.
- **The May 29 Zero-Byte Fraudulent Placeholder Hook:** Exactly twenty-four hours later, on May 29, 2026, counsel authorized a highly anomalous, non-bona fide transmission logging an empty electronic placeholder package displaying system metrics of TOTAL DOCUMENTS: 0 and SIZE: 0 KB, exclusively designed to secure an unauthorized administrative timestamp handle in the database wrapper [MPEP § 502.05].
- **The June 5 /M.E.G./ Manual Vault Defacement & Concealment:** On June 5, 2026, internal operators utilized this open write-privilege slot to execute a manual, pen-and-ink erasure on a locked filing layer, scratching through a fabricated "Yewale 2023" citation—which had been maintained for two years solely to bypass automated electronic error-rejection gates—to overwrite it by hand with "Wood et al. 11/2015." Counsel willfully withheld and concealed this hand-altered layer from the public docket for nearly three months.
- **The July 7 Hidden Payment and the August 26 Laundering Layer:** While actively concealing this modified record, the applicants processed the final Issue Fee Payment on July 7, 2026, to lock the application into the printing cycle. Counsel quietly dumped the June 5 defacement sheet onto the live public docket on August 26, 2026—exactly 48 hours after being served with formal *Therasense* warnings—bypassing all mandatory petition channels under 37 CFR § 1.312 or § 1.313.
- **The September 1 /K.D.D./ Metadata Degradation Act:** When Plaintiff escalated this fraud track to senior European authorities (including the University of Turku Rector and Business

Finland Audit Layers) on August 31, 2026, operator /K.D.D./ desperately re-entered the locked system folder exactly 24 hours later on September 1, 2026. Bypassing all lawful channels, the operator manually drew ink lines straight through the validly logged text "CAPACITOR SCIENCES INCORPORATED" to write "Lazarev et al." by hand, and struck through the typed publication date of "2010-01-07" for "Lichun Chen et al." to replace it with the generalized block "7/2010" to intentionally corrupt searchable metadata blocks, disrupt automated search cross-referencing, and outrun an imminent federal regulatory audit.

9. On September 8, 2026, the USPTO Office of Enrollment and Discipline formally logged these violations under disciplinary tracking layer ***In re: Richard S Wesorick*** pursuant to 37 CFR § 11.22, following an atypically accelerated review of Plaintiff's forensic payloads.
10. Despite this open criminal and ethical evaluation under 18 U.S.C. § 1001 and 37 CFR § 11.303, the Office of Patent Legal Administration ("OPLA") formally executed a refusal to stop the printing queue on September 16, 2026, creating an incurable regulatory failure mode wherein an invalid, corrupted application will be finalized into an enforceable property right on Tuesday, September 22, 2026.

**COUNT I**

**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT (APA)**

**5 U.S.C. § 706(2)(A) - ARBITRARY, CAPRICIOUS, AND ABUSE OF DISCRETION**

11. Plaintiff realleges paragraphs 1 through 10.

12. The USPTO's deliberate reliance on automated printing timelines over explicit, documented notifications of active database spoliation constitutes agency action that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

13. Under MPEP § 1308.01, the Commissioner possesses clear authority to withdraw an application from issuance sua sponte when the integrity of the record is compromised. The agency's failure to coordinate between OED database traffic logs and OPLA printing queues to halt a fraudulent asset track represents a wholesale abdication of its statutory mandate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Issue an Emergency Temporary Restraining Order and Preliminary Injunction directing the Defendants to immediately pull Application No. 17/608,275 from the electronic printing queue and stay its issuance pending final resolution of the OED disciplinary investigation;

B. Enter a Declaratory Judgment that the agency's refusal to halt the printing queue in the face of documented live-docket data alterations constitutes an abuse of discretion under 5 U.S.C. § 706; and

C. Grant such other and further relief as this Court deems just and proper.

Dated: September 18, 2026

**Respectfully submitted,**

SERGIO E DOMINGUEZ

**Dr. Sergio Ulises Espinosa Domínguez**

Complainant Pro Se

sergioedominguez@gmail.com

Mobile: +52 1 55 4074 4566